**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

SHEENA HARRIS,                  :

    Plaintiff,                 :

vs.                             :        CA 08-0462-C

MICHAEL J. ASTRUE,              :
Commissioner of Social Security,
                                                 :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record,

plaintiff's brief, the Commissioner's brief, and the parties' arguments at the March 23, 2009 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

The Administrative Law Judge (ALJ) made the following findings:

**3. The claimant has the following severe impairments: major depressive disorder, moderate, fatigue, low back pain, and knee pain (20 CFR 404.1520(c) and 416.920(c)).**

. . .

Dr. Huey Kidd performed a consultative physical examination on November 12, 2007.

. . .

Dr. Kidd completed a medical source opinion (physical) form on November 12, 2007. Dr. Kidd indicated that the claimant's ability to sit was unlimited. She could stand 10-15 minutes at a time and up to 2 hours total in an 8 hour day. She could walk 10-15 minutes at a time and up to 2 hours total in an 8 hour day. She can constantly lift and carry 5 pounds, frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds. She can constantly use her arms and legs for pushing and pulling. She can constantly handle, finger, feel, talk, hear and reach overhead. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She should avoid working in high exposed

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

places. She can constantly work in the following environments: extreme cold, extreme heat, wetness, humidity, vibration, exposure to fumes, noxious odors, dust, mist, gases, poor ventilation, proximity to moving mechanical parts, and driving automotive equipment (Exhibit 5F).

Dr. Nina E. Tocci performed a consultative psychological evaluation on November 20, 2007.

. . .

Dr. Tocci diagnosed: Obsessive-Compulsive Disorder and Major Depressive Disorder-Moderate. Dr. Tocci assigned a Global Assessment of Functioning (GAF) score of 60.

According to the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, a GAF of between 51 and 60 represents: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

. . .

Dr. Tocci completed a medical source opinion form (mental) on November 26, 2007. Dr. Tocci indicated that the claimant was not limited in her ability to maintain activities of daily living. Dr. Tocci indicated that the claimant was mildly limited in the following areas: the ability to respond appropriately to supervisors; the ability to use judgment in simple one or two step work-related decisions; the ability to understand, remember, and carry out, simple one and two step instructions and the ability to maintain social functioning. Dr. Tocci indicated that the claimant was moderately limited in the following areas: the ability to respond appropriately to co-workers; the ability to respond appropriately to customers or other members of the general public; the ability to use judgment in detailed or complex work related decisions; the ability to deal with changes

3

in a routine work setting; the ability to understand, remember, and carry out detailed or complex instructions, and the ability to maintain attention, concentration or pace for periods of at least two hours (Exhibit 6F).

Subsequent to the hearing, Linda W. Williams, an impartial vocational expert provided responses to written interrogatories (Exhibit 11E). The vocational expert indicated on February 12, 2008, that the claimant was 30 years old, had a high school equivalency diploma, and no transferable skills to lighter work.

The claimant's past relevant work includes:

| | |
|---|---|
| Cashier– Checker | L-3 |
| Waitress– Informal | L-3 |
| Housekeeper | M-2 |

The vocational expert indicated: Huey Kidd, D.O.'s Narrative Statement and Medical Source opinions are contradictory so I have answered the Question 11.a. based on both parts of the Exhibit.

Based on the Narrative Statement "She doesn't have any physical reason she couldn't work"

> a. Yes, she could still do:
> Cashier– Checker L-3 (light and semi-skilled)
> Waitress– Informal L-3 (light and semi-skilled)

Based on the Medical Source Opinion (physical):

a. No, she would not be able to do her PRW. Due to the exertional limitations she would be limited to sedentary.

b. Yes, she would be able to perform the following jobs:

c. Job Title    Skill Level    Strength

|   | Label Pinker | Unskilled | Sedentary |
|---|---|---|---|
|   | Escort Vehicle Driver | Unskilled | Sedentary |
|   | Charge Account Clerk | Unskilled | Sedentary |

| c. | #'s in Alabama | #'s in the Nation |
|---|---|---|
|   | 1,500 | 58,000 |
|   | 3,000 | 900,000 |
|   | 1,800 | 69,000 |

If we superimpose Nina E. Tocci, Ph.D.'s Narrative and Medical Source Opinion, the claimant would be unable to do her PRW as this information would limit her to unskilled work. She would be able to perform the jobs listed above in "c".

**4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

**5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary (unskilled) work as defined in 20 CFR 404.1567(a) and 416.967(a) within the limitations/considerations set forth in Dr. Kidd's medical source opinion (physical) and in Dr. Tocci's medical source opinion (mental).**

. . .

There is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. In this regard, the claimant reported on the Disability Report that she stopped working May 15, 2004. She added: Not due to my illness (Exhibit 1E).

The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In this regard, the claimant reported on October 20, 2005, that she washes dishes, cleans the kitchen, waters house plants, puts the laundry on, makes lunch, cleans up, checks the mail, folds the laundry, takes a bath, watches television, reads for a few hours, sweeps, mops, cleans the carpet, feeds the dogs and cats and cleans up after them. She can perform most activities for 30 minutes and she can drive for up to 200 miles at a time (Exhibit 3E).

As for the opinion evidence, I give little weight to Dr. Kidd's Narrative Statement regarding mental issues, which reads in part: "from a psychiatric illness standpoint, she may be dsabled." The doctor's opinion appears to rest on an assessment of an impairment outside of the doctor's area of expertise.

I do however give substantial weight to Dr. Kidd's medical source opinion (physical) regarding the claimant's physical activities. His opinion is well supported by his own clinical examination and testing and is generally consistent with the record.

I give substantial weight to Dr. Tocci's medical source opinion (mental) regarding the claimant's mental abilities. Her opinion is well supported by her own clinical evaluation and testing and is generally consistent with the record.

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The record reveals infrequent trips to the mental health center for the allegedly disabling impairment (only six sessions from 2006 to 2007).

**6.     The claimant would be unable to perform her past relevant work (Cashier/Checker, semi-skilled, light); (Waitress, Informal, semi-skilled, light) and (Housekeeper, unskilled, medium) (20 CFR 404.1565 and 416.965).**

> **7.     The claimant is a younger individual.**
>
> **8.     The claimant has a high school equivalency diploma.**
>
> **9.     The claimant has not acquired skills that will transfer to other jobs within the residual functional capacity set out above.**
>
> **10.    The framework of Rule 201.27 of the Medical-Vocational Guidelines and the vocational expert's responses to interrogatories demonstrate that the claimant has the residual functional capacity to perform jobs that exist in significant numbers in the national economy. The vocational expert provided a representative sampling of such jobs, including: Label Pinker (unskilled, sedentary) with 1,500 jobs in the State of Alabama and 58,000 jobs in the United States, Escort Vehicle Driver (unskilled, sedentary) with 3,000 jobs in the State of Alabama and 900,000 jobs in the United States and Charge Account Clerk (unskilled, sedentary) with 1,800 jobs in the State of Alabama and 69,000 jobs in the United States.**
>
> Pursuant to SSR 00-4p, the vocational expert's responses to the interrogatories are consistent with the information contained in the Dictionary of Occupational Titles.
>
> **11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 21, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 14, 16, 17, 18-19 & 20-21 (emphasis in original)) In affirming the ALJ's decision (Tr. 5-7), the Appeals Council stated the following: "[W]e considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information

does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 5-6)

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform the sedentary jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, plaintiff contends that the ALJ made the following errors: (1) he erred in failing to properly evaluate her depression based on a failure to properly review the treatment records from West Alabama Mental Health Center; (2) he failed to develop the record regarding her depression; (3) he erred in rejecting the testimony of the vocational expert who appeared at the hearing and in posing an incomplete hypothetical to the vocational expert to whom he sent written interrogatories; and (4) he erred in finding that plaintiff does not meet a listed impairment, namely, Listing 12.04. In addition, plaintiff claims that the Appeals Council failed to properly considered the evidence submitted to it. Because the Court finds that the ALJ erred with respect to the first issue raised by the plaintiff, it is not necessary for the Court to consider the other errors raised. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

Plaintiff contends that the ALJ erred in evaluating her depression because he failed to properly review the treatment records from West Alabama Mental Health Center. It cannot be gainsaid that the ALJ improperly noted that plaintiff made only six visits to the mental health center during the period 2006 to 2007, rather than the true number (15 or 16). (*Compare* Tr. 20 ("The record reveals infrequent trips to the mental health center for the allegedly disabling impairments (only six sessions from 2006 to 2007).") *with* Tr. 113-143 (records from West Alabama Mental Health Center)) In addition, the ALJ failed to specifically make mention of the particulars of any of those visits, including her GAF score of 50 on October 24, 2006 (Doc. 121),[2] and, as well, the decision contains no analysis suggesting that the medical evidence from West Alabama Mental Health Center was consistent with the evaluation conducted by Dr. Tocci. Instead, the ALJ made the very general and conclusory observation that "[t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual[,]" (Tr. 20) based upon an improper characterization of the evidence of record (*id.* ("The record reveals infrequent trips to the mental health center for the

---

[2] A Global Assessment of Functioning (GAF) score of 50 is "consistent with serious limitations bordering on moderate difficulty." *Hall v. Commissioner of Social Security*, 2007 WL 4981325, *3 (M.D. Fla. 2007), citing *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994).

allegedly disabling impairments (only six sessions from 2006 to 2007).").

This Court concludes that because the ALJ in this case failed to state the specific weight accorded the obviously probative evidence from West Alabama Mental Health Center, and how that evidence stacked up to the consultative evaluation of Dr. Tocci, a determination cannot be made whether there is substantial evidence in the record which supports the Commissioner's finding that plaintiff retains the mental residual functional capacity to perform unskilled sedentary work. *See Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir. 1985) ("Our review is limited to determining whether there is substantial evidence in the record as a whole to support the Secretary's findings. . . . We cannot, however, conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered."). This cause need be remanded so that an ALJ can "evaluate all the relevant evidence[,] . . . 'not only that evidence which supports [his] position.'" *Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 590, 2006 WL 1168815, *1 (11th Cir. 2006)[3] (citations omitted).

## **CONCLUSION**

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

In consideration of the foregoing, the Court **ORDERS** that the Commissioner's decision denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** this the 30th day of March, 2009.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**